Citation Nr: 1808259 
Decision Date: 02/08/18 Archive Date: 02/20/18

DOCKET NO. 11-14 978A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Des Moines, Iowa


THE ISSUES

1. Entitlement to service connection for a left knee disability.
 
2. Entitlement to service connection for low back arthritis.

3. Entitlement to service connection for a neurologic disability, to include radiculopathy, of the bilateral lower extremities.

4. Entitlement to an increased rating for a right ankle disability, in excess of 20 percent prior to August 3, 2010; in excess of 40 percent from August 3, 2010, to July 25, 2011; and in excess of 40 percent as of November 1, 2011.
 
5. Entitlement to an increased rating in excess of 20 percent for a left shoulder disability.

6. Entitlement to an increased rating in excess of 10 percent for right knee sprain with instability.
 
7. Entitlement to an increased rating in excess of 10 percent for right knee arthritis with limitation of motion.


REPRESENTATION

Appellant represented by: Niki Fisher, Attorney


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Zi-Heng Zhu


INTRODUCTION

The Veteran had active service from January 1978 to December 1981 and from January 1989 to July 1992.

These matters come to the Board of Veterans' Appeals (Board) on appeal from rating decisions from February 2009 and May 2010 of the Department of Veterans Affairs (VA) Regional Office (RO) in Des Moines, Iowa.

An August 2017 rating decision assigned an increased rating of 20 percent for a left shoulder disability. That increased rating is not considered a full grant of benefits sought, and thus the claim for increased rating remains on appeal. AB v. Brown, 6 Vet. App. 35 (1993). 

These claims were most recently remanded by the Board in July 2016 for further development to include providing VA examinations. The Board finds that development was substantially accomplished.


FINDINGS OF FACT

1. Resolving all reasonable doubt in favor of the Veteran, the evidence supports a finding that the Veteran has a left knee disability that is aggravated by a service-connected right ankle disability.

2. Resolving all reasonable doubt in favor of the Veteran, the evidence supports a finding that the Veteran has lumbar spine arthritis that is aggravated by a service-connected right ankle disability.

3. Resolving all reasonable doubt in favor of the Veteran, the evidence supports a finding that the Veteran has radiculopathy of the right lower extremity that is etiologically related to a service-connected back disability.

4. The preponderance of evidence shows that the Veteran has diabetic peripheral neuropathy of the bilateral lower extremities, secondary to his uncontrolled nonservice-connected diabetes, but the preponderance of the evidence is against a finding that the Veteran has radiculopathy, or any other nerve paralysis, of the left lower extremity. 

5. Prior to August 3, 2010, residuals of a right ankle arthroplasty with right ankle replacement manifested with constant pain on movement. 

6. From August 3, 2010, to July 25, 2011, and as of November 1, 2011, the Veteran's right ankle condition manifested with severe pain on movement and weakness. 

7. Right knee sprain instability has been manifested by slight or no lateral instability.
8. A right knee disability with limitation of motion is manifested by pain and range of motion limited to flexion of 110 degrees and extension of 0 degrees, with X-ray evidence of arthritis, with no additional limitation due to flare-up, and no ankylosis.

9. The Veteran's left shoulder disability does not result in motion limited to 25 degrees to the side, impairment of the humerus, impairment of the clavicle or scapula, or ankylosis.


CONCLUSIONS OF LAW

1. The criteria for service connection for aggravation of a left knee disability have been met. 38 U.S.C. §§1110, 1131, 1132, 5103A, 5107 (2012); 38 C.F.R. §§3.102, 3.159, 3.303, 3.304 (2017).

2. The criteria for service connection for aggravation of low back arthritis have been met. 38 U.S.C. §§1110, 1131, 1132, 5103A, 5107 (2012); 38 C.F.R. §§3.102, 3.159, 3.303, 3.304 (2017).

3. The criteria for service connection for radiculopathy of the right lower extremity have been met. 38 U.S.C. §§1110, 1131, 1132, 5103A, 5107 (2012); 38 C.F.R. §§3.102, 3.159, 3.303, 3.304 (2017).

4. The criteria for service connection for radiculopathy of the left lower extremity have not been met. 38 U.S.C. §§1110, 1131, 1132, 5103A, 5107 (2012); 38 C.F.R. §§3.102, 3.159, 3.303, 3.304 (2017).

5. The criteria for a 40 percent rating, but not higher, for chronic residuals following right ankle replacement with prosthesis for the appeal period prior to August 3, 2010, have been met. 38 U.S.C. §1155 (2012); 38 C.F.R. §4.71a, Diagnostic Code 5056 (2017).

6. The criteria for an increased rating in excess of a 40 percent rating, to include extraschedular consideration, for a right ankle disability, from to August 3, 2010, to July 25, 2011, and as of November 1, 2011, have not been met. 38 U.S.C. §1155 (2012); 38 C.F.R. §4.71a, Diagnostic Code 5056 (2017).

7. The criteria for an increased rating in excess of 10 percent, for right knee instability have not been met. 38 U.S.C. §§1155, 5107 (2012); 38 C.F.R. §§4.3, 4.71a, Diagnostic Code 5257 (2017).

8. The criteria for an increased rating in excess of 10 percent for a right knee disability manifested by limitation of motion have not been met. 38 U.S.C. §1155 (2012); 38 C.F.R. §4.71a, Diagnostic Code 5260 (2017).

9. The criteria for a rating greater than 20 percent for a left shoulder disability have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.71a, Diagnostic Codes 5201(2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to notify a Veteran of the information and evidence necessary to substantiate a claim for VA benefits. 38 U.S.C. §§5103, 5103A (2012); 38 C.F.R. §3.159 (2017). VA also has a duty to assist Veterans in the development of claims. 38 U.S.C. §§5103, 5103A (2012). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C. §5103(a) (2012); 38 C.F.R. §3.159(b) (2017); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will to provide; and (3) that the claimant is expected to provide. The notice should be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

The notice requirements apply to all five elements of a service-connection claim, including: (1) Veteran status; (2) existence of a disability; (3) a connection between service and the disability; (4) degree of disability; and (5) effective date of the disability. The notice should include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Dingess v. Nicholson, 19 Vet. App. 473 (2006). Correspondence dated in December 2008 provided all necessary notification to the Veteran.

VA has done everything reasonably possible to assist the Veteran with respect to the claims for benefits. 38 U.S.C. §5103A (2012); 38 C.F.R. §3.159(c) (2016). The service medical records have been associated with the claims file. All identified and available treatment records have been secured, which includes VA examinations and VA health records. The duty to assist includes, when appropriate, the duty to conduct a thorough and contemporaneous examination of the veteran. Green v. Derwinski, 1 Vet. App. 121 (1991). When VA provides an examination, VA must ensure that the examination is adequate. Barr v. Nicholson, 21 Vet. App. 303 (2007).

The Veteran has been provided with VA examinations. The examiners reviewed the claims file and past medical history, and made appropriate diagnoses and opinions consistent with the remainder of the evidence of record. The Board concludes that the VA examination reports are adequate for the purpose of making a decision. 38 C.F.R. §4.2 (2017); Barr v. Nicholson, 21 Vet. App. 303 (2007).

The Board is satisfied that all relevant facts have been adequately developed to the extent possible and that no further assistance is required to comply with the duty to assist. Accordingly, the Board will proceed with a decision.

Service Connection

Service connection may be granted for disability caused by disease or injury incurred in or aggravated by active service. 38 U.S.C. §§1110, 1131 (2012); 38 C.F.R. §3.303 (2017). In order to establish service connection for a claimed disability, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) evidence, generally medical, of a relationship between the claimed in-service disease or injury and the current disability. Hickson v. West, 12 Vet. App. 247 (1999).

A disability that is proximately due to or the result of a service connected disease or injury shall be service connected. When service connection is established for a secondary disability, the secondary disability shall be considered a part of the original disability. 38 C.F.R. §3.310(a) (2017). Secondary service connection may also be established for a non-service connected disability, which is aggravated by a service-connected disability. In such an instance, the Veteran is compensated for the degree of disability over and above the degree of disability existing prior to the aggravation. 38 C.F.R. §3.310(b) (2017); Allen v. Brown, 7 Vet. App. 439 (1995).

Left Knee

The Veteran claims that a currently diagnosed left knee disability, to include degenerative arthritis of the left knee, is etiologically related, or aggravated by service-connected right ankle and right knee disabilities. The Board finds that, after a review of the extensive medical and lay evidence of record, to include both positive and negative etiological opinions, the competent medical evidence of record is at least in equipoise. Therefore, resolving all reasonable doubt in favor of the Veteran, the Board finds that service connection for aggravation of a left knee disability is warranted, and the claim must be granted. 

With regard to the opinions reviewed of record, the Board notes that the Veteran had submitted a July 2009 private opinion from his treating chiropractor, K. W. That private opinion found a connection between a service-connected right ankle disability and the left knee disability. K. W. noted that due to the Veteran's severe right ankle disability, the Veteran walked with an abnormal gait and posture, which in turn caused disability in the hip and left knee. 

During the course of the appeal, the Veteran was provided VA examinations to assess the nature and etiology of the claimed left knee disability in March 2015 and May 2017. Those VA opinions noted a negative conclusion with regard to establishing any etiological connection between a left knee disability and service or service-connected disability. A thorough review of these reports, however, reveals that those opinions were incomplete in some fashion in addressing any potential secondary connection between the service-connected disabilities and any left knee disability. The Board finds those opinions to be of limited probative value. 

A March 2015 VA examination of the left knee noted no etiological nexus between the left knee and active service. The examiner noted a review of the service medical record showed no in-service complaint or injury to the left knee. Therefore, no nexus could be concluded with service. The examiner also found that there was not medical basis for finding any secondary causal relationship between the left knee disability and the service-connected disabilities, to specifically include the service-connected right knee and ankle disabilities. The examiner noted that there was no medical basis or literature that competently related a disability or degenerative joint disease in one leg, resulting in disability in the opposing leg, unless there was a paralytic gait. The examiner noted that the Veteran only had an antalgic gait, which the examiner opined cannot cause such a defect in the counter-lateral leg or extremity. 

A March 2015 examiner noted that it was less likely than not that left knee degenerative arthritis was aggravated by any service-connected disability. The Board finds that the examiner provided an inadequate rationale with regard to aggravation, noting only that the Veteran did not complain about a left knee disability. The Veteran was nonetheless diagnosed with a left knee disability, which the examiner did not address, or justify finding that disability was not aggravated by service-connected conditions. 

In a May 2017 VA examination, the VA examiner concluded negatively with regard to any etiological connection, direct or secondary, with any aspect of active service, or any service-connected disabilities. The examiner noted that there was no medical basis to find that disability in one lower extremity results in the disability of the opposite side. The examiner cited multiple medical studies and literature speaking to counter-lateral weight shifting, and how disease on one side does not transfer to the opposite side extremity. Further, with regard to aggravation, the examiner noted that while the Veteran's left knee disability has progressed, it had not exceeded the natural progression, or baseline, of the development of the disease. 

In reviewing and weighing the competent evidence of record, to include both the positive and negative opinions, the Board finds that the evidence is in equipoise as to whether a service-connected right ankle disability aggravated a left knee disability. The Board finds that, while the VA examinations and opinions to be more comprehensive, they have not explicitly address the positive opinion of record, which explicitly contradicts the basis for both VA opinions and provides a plausible opinion in favor of the claim with a rationale. Therefore, the Board finds the opinions for and against to have equal weight. 

Accordingly, the Board will resolve reasonable doubt in favor of the Veteran and grant service connection for aggravation of a left knee disability. 38 U.S.C. §5107 (2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Back Arthritis

The Veteran's contends that his service-connected disabilities, to specifically include a right ankle disability, caused or aggravated a low back arthritis. The Veteran has already established service connection for lumbosacral strain. The Veteran asserts the residual effects and symptoms of the right ankle disability cause him to have an abnormal gait that affects his back. The Board finds that, after a review of the extensive medical and lay evidence of record, to include various VA examinations and opinions, that the competent medical evidence of record is at least in equipoise. Therefore, resolving all reasonable doubt in favor of the Veteran, the Board finds that service connection for aggravation of low back arthritis is warranted, and the claim must be granted. 

During the course of the appeal, the Veteran was provided several VA back examinations to assess the nature and etiology of the claimed back disability in March 2012, March 2015, and May 2017. The Board notes that those examinations offer both positive and negative opinions with regard to establishing an etiological connection between a back disability and service-connected disabilities. A thorough review of the reports shows that those opinions are all incomplete in some fashion in addressing any potential secondary connection between the service-connected disabilities and a back disability. As a result, the Board finds that the evidence of record, positive and negative, is at least in equipoise. 

In a March 2012 VA examination report, the examiner noted that the Veteran's diagnosed spondylosis was less likely than not related to a service fall into a foxhole and more likely related to the Veteran's progressive age. The examiner did not address any theories of secondary causation or aggravation with regard to the service-connected disabilities. 

A March 2015 VA examination back is also deficient in providing an adequate opinion, and is internally inconsistent and contradictory. Specifically, the examiner found that the diagnosed degenerative arthritis of the back was not caused or etiologically related to any aspect of active service. The examiner explicitly noted that the degenerative joint disease of the back was first diagnosed in 2007, a decade and half after the Veteran separated from service, and therefore, that back disability could not be found to be related to a fall during his active service. However, a few pages later in the same report, when speaking to any etiological relationship between any back disability and service-connected disabilities, such as the right ankle and foot disabilities, the examiner notes that secondary causation was not possible, as the Veteran's back disability originated during service in the early 1990s, prior to any of the service-connected disabilities, and therefore no secondary connection was possible. 

The Board finds that the March 2015 VA examiner rationale with regard to secondary service connection to be internationally contradictory to the same examiner's rationale denying direct service connection. The opinion seems to confuse the already service-connected lumbosacral strain, and the claim for service connection degenerative joint disease of the lumbar spine, when speaking to any secondary causation. 

Most significantly, the Board notes that with regard to secondary aggravation, the examiner, in essence, provided a positive opinion. The examiner noted that while it would be speculation to find that any aggravation to the back disability was caused by the service-connected disabilities, multiple other orthopedic conditions could potentially make the low back condition worse. The Board finds that statement to be considered positive in nature in demonstrating that any increase in the Veteran's back disability of degenerative joint disease can, in fact, be attributed to service-connected disabilities, to include right ankle and knee disabilities. 

A May 2017 VA examination is also found to be deficient. Specifically, the examiner provided an identical rationale for both the claim for a back disability and his left knee disability. A close review of the language shows that the findings are not wholly applicable to the claim for degenerative joint disease of the back, especially in light of a positive opinion from another medical professional. The rationale provided spoke to counterlateral weight shifting, and how disease on one side does not transfer to the opposite side extremity. That medical rationale, while possibly applicable to the claim for a left knee disability, is inadequate for competently addressing the claim for a back disability. 

The Board finds that the March 2015 positive correlation between the Veteran's back and service-connected orthopedic disabilities must be considered positive and in favor of the Veteran. During the course of the claim, the Veteran has asserted increase in both pain and functional limitation of the back. Considering the inadequacies of those negative opinions, the Board must find must that the evidence is in equipoise as to whether a service-connected right ankle disability aggravated lumbar spine degenerative joint disease.

Accordingly, the Board will resolve reasonable doubt in favor of the Veteran and grant service connection for aggravation of lumbar spine arthritis. 38 U.S.C. §5107 (2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 



Radiculopathy of the Right Lower Extremity

As a preliminary matter, the Board notes that the Veteran was diagnosed with radiculopathy of the right lower extremity during a March 2015 VA spine examination. That examination found moderate radiculopathy affecting the femoral nerve, manifesting with moderate intermittent pain, paresthesias, and numbness. The examiner opined that the neurological disability was due to a low back disability. The Board notes that the Veteran has established service connection for lumbar spine degenerative joint disease, which is shown to cause the right lower extremity radiculopathy. Therefore, as there is competent medical evidence that radiculopathy of the right lower extremity is caused by a service-connected disability, the Board finds that service connection is warranted, and the claim for service connection for radiculopathy of the right lower extremity must be granted. 

Radiculopathy or Neurologic Disability of the Left Lower Extremity

The Veteran has already established service connection for left lower extremity peripheral neuropathy, which will not be considered. The Board will adjudicate whether service connection is warranted for any other neurologic disability of the left lower extremity.

As a preliminary matter, the Board notes that the March 2015 VA examination which identified radiculopathy of the right lower extremity, did not find any nerve condition associated with the left lower extremity. A review of all previous back examinations shows no evidence of any left lower extremity radiculopathy related to any back disability. Therefore, the Board finds that service connection for radiculopathy of the left lower extremity as due to his service-connected back condition is not warranted. Brammer v. Derwinski, 3 Vet. App. 223 (1992).

However, in the Veteran's most recent VA examination, in May 2017, he was diagnosed with diabetic peripheral neuropathy of both lower extremities. The examiner noted that disability was related to the Veteran's uncontrolled diabetes, and not due to or aggravated by any service-connected disability. The Veteran has established service connection for bilateral lower extremity peripheral neuropathy. The evidence of record does not show any additional left lower extremity neurologic disability for which service connection can be granted. Congress has specifically limited entitlement to service-connected benefits to cases where there is a current disability. In the absence of proof of a present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223 (1992).

Accordingly, the Board finds that as the preponderance of evidence is against a finding that there is any left lower extremity neurologic disability, other than the already service-connected peripheral neuropathy, for which service connection could be granted. Therefore, the claim must be denied. 38 U.S.C. §5107 (2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Increased Ratings

Disability ratings are determined by the application of the VA's Schedule for Rating Disabilities. 38 C.F.R. Part 4 (2017). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during service and their residual conditions in civil occupations. 38 U.S.C. §1155 (2012); 38 C.F.R. §§3.321(a), 4.1 (2017).

It is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom are sufficient. A coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. §4.21 (2017).

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. §4.7 (2017).

The rating of the same disability under various diagnoses is prohibited. 38 C.F.R. §4.14 (2017). However, that does not preclude the assignment of separate ratings for separate and distinct symptomatology where none of the symptomatology justifying a rating under one diagnostic code is duplicative of or overlapping with the symptomatology justifying a rating under another diagnostic code. Esteban v. Brown, 6 Vet. App. 259 (1994).

Different ratings may be assigned for separate periods of time if distinct periods are shown by the competent evidence of record during the pendency of the appeal that warrants different ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Whether lay evidence is competent and sufficient in a particular case is an issue of fact and that lay evidence can be competent and sufficient to establish a diagnosis when (1) a layperson is competent to identify the medical condition (sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer), (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

The Board has authority to discount the weight and probity of evidence in light of its own inherent characteristics and its relationship to other items of evidence. Madden v. Gober, 125 F.3d 1477 (Fed. Cir. 1997). VA may favor one medical opinion over another provided that VA offers an adequate basis for doing so. Owens v. Brown, 7 Vet. App. 429 (1995).

Right Ankle Disability

Disabilities of the ankle are rated under the criteria of Diagnostic Codes 5270 for ankylosis, 5271 for limitation of motion, and 5056 for residuals of total ankle replacement (2017). Under Diagnostic Code 5270, a 20 percent rating is assigned for marked limited motion of the ankle. That is the highest schedular rating available. 38 C.F.R. § 4.71a (2017). 

Under Diagnostic Code 5270, a 30 percent rating is warranted for ankylosis of the ankle in plantar flexion is between 30 and 40 degrees or in dorsiflexion between 0 and 10 degrees. A 40 percent rating is warranted for ankylosis of the ankle in plantar flexion is at more than 40 degrees or in dorsiflexion at more than 10 degrees, or with abduction, adduction, inversion or eversion deformity. 38 C.F.R. §4.71a, Diagnostic Code 5270 (2017).

Under Diagnostic Code 5056, a minimum 20 percent rating is warranted for prosthetic ankle replacement. Intermediate degrees of residual weakness, pain or limitation of motion are to be rated by analogy to Diagnostic Code 5270 or 5271. A 40 percent rating is warranted for chronic residuals consisting of severe painful motion or weakness. That is the highest schedular rating available under Diagnostic Code 5056. 38 C.F.R. §4.71a, Diagnostic Code 5056 (2017).

Prior to August 3, 2010

Prior to August 3, 2010, the Veteran's right ankle disability was rated as 20 percent disabling under the criteria of 38 C.F.R. §4.71a, Diagnostic Code 5271 (2017). Under that diagnostic code, the 20 percent rating for marked limitation of motion is the highest schedular rating available. 

Higher ratings are available under Diagnostic Codes 5270 and 5056. As an initial matter, the Board notes that higher rating under 5270 is inapplicable to the Veteran's right ankle disability as any ratings under this Diagnostic Code requires diagnosis of ankylosis, which was not diagnosed or found by medical evidence during this period . A November 2009 VA examination shows no evidence of ankylosis of the right ankle. A review of the VA medical records during this period shows no evidence of a diagnosis of ankylosis. Therefore, a higher rating under Diagnostic Code 5270 is not warranted. 

The Board finds that a higher 40 percent rating is warranted under Diagnostic Code 5056, for residuals of a total ankle replacement. The Veteran received a total right ankle replacement in 2004. Subsequent to that surgery, the Veteran was rated a 20 percent by analogy under Diagnostic Code 5271 for limitation of motion. However, the Board finds that the Veteran's condition fulfills the criteria for a 40 percent rating under Diagnostic Code 5056. Under Diagnostic Code 5056, residuals of the Veteran's ankle replacement show severe pain on movement or weakness. Resolving reasonable doubt in favor of the Veteran, The evidence of record shows that the Veteran's right ankle had severe pain on motion prior to August 3, 2010. 

Specifically, a review of the Veteran's lay statements, and medical records of the relevant period shows constant pain on movement of the Veteran's right ankle, to a point where he was restricted in both walking and standing. A February 2009 VA examination noted increased pain on use of the ankle, with muscle inflexibility, which limited motion. The examiner noted nearly constant swelling, pain, and stiffness, with a limp while walking. A November 2009 VA examination noted the Veteran reporting constant pain in the right ankle that prevented movement or pro-longed walking or standing. The medical evidence also noted that the Veteran required the use of an ankle brace nearly constantly to relieve pain on movement. 

Additionally, the Veteran has continuously asserted constant pain in his right ankle and limitation of movement, that severely affected his daily and occupational functioning. 

Based on the evidence, the Board does find that the right ankle disability more closely approximated the criteria for a higher rating of 40 percent under Diagnostic Code 5056 for severe pain on motion or weakness, post ankle replacement, for the appeal period prior to August 3, 2010. The probative and competent medical evidence from this period shows that the Veteran experienced severe painful motion of the ankle without ankylosis of the joint. The evidence shows that the Veteran experienced severe ankle pain but was able to ambulate for short distances and time. Therefore, as severe pain on motion was shown, a higher rating of 40 percent, but not higher, for the relevant appeals period prior to August 3, 2010, is warranted, and the claim is granted. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C. § 5107 (2012); 38 C.F.R. § 3.102 (2016).



From August 3, 2010, to July 25, 2011, and as of November 1, 2011

As a preliminary matter, the Board notes that during this relevant period, which does not include any period of temporary 100 percent rating for convalescence, the Veteran's right ankle condition has been rated 40 percent . A 40 percent rating is the highest schedular rating possible for an ankle disability under any applicable Diagnostic Code. Therefore, for this period, only extraschedular consideration is available for any rating in excess of 40 percent. However, the Board finds that after a thorough review and consideration of all the relevant evidence of record, to include the Veteran's lay statements, VA examinations, and medical records, the evidence is against the finding that an extraschedular rating is warranted for a right ankle disability. 

During the relevant time period, the Veteran attended VA examinations of the nature and severity of a right ankle disability in August 2010, May 2011, March 2015, and May 2017. Generally, in the examination reports, the Veteran was repeatedly assessed with severe and constant pain, especially after prolonged use such as walking and standing, with extremely limited to no range of motion in the right ankle. The Veteran's disability has also caused functional loss to include not being able to lift, pull, or push, with limited ability to climb ladders and stairs, and minimal ability to do daily chores. The Veteran ambulates with a cane, and consistently wears an ankle brace for pain and stability. 

A review of the various other VA medical records, and various lay statements from the Veteran and his friends and family, shows similar claims of symptoms and manifestations of the right ankle disability, as those identified during the VA examination noted herein. The Board will address the claim for extraschedular rating for those periods when the ankle disability was rated 40 percent.

Extraschedular Consideration

Although the Board is precluded by regulation from assigning an extraschedular rating under 38 C.F.R. §3.321(b)(1) in the first instance, the Board is not precluded from considering whether the case should be referred to the Director of VA's Compensation Service for consideration of an extraschedular rating. 

The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular ratings for that service-connected disability are inadequate. That is accomplished by comparing the level of severity and symptomatology of the service-connected disability with the established criteria. If the criteria reasonably describe the disability level and symptomatology, then the disability picture is contemplated by the Rating Schedule, the assigned schedular rating is adequate, and referral for an extraschedular rating is not required. Thun v. Peake, 22 Vet. App. 111 (2008).

The Board finds the Veteran's right ankle disability does not present an exceptional or unusual disability picture such that the application of the regular schedular standards would be inapplicable. 38 C.F.R. §3.321(b) (2017). Specifically, his disability is manifested primarily by reports of pain, reduced range of motion, swelling, difficulty standing or walking for prolonged periods of time, and an inability climb steps or do daily chores. While, those impairments are admittedly severe in nature, and may impede many aspects of the Veteran's daily life, those manifestations and related impairment are contemplated by criteria for the schedular rating currently assigned. The 40 percent rating not only contemplates marked decrease in range of motion, but also severe constant pain, weakness, and instability, or even ankylosis. Therefore, the Board finds that there is nothing exceptional or unusual about the right ankle disability, and referral for extraschedular consideration is not warranted. Thun v. Peake, 22 Vet. App. 111 (2008). 

Other Considerations

The Board has also considered the application other, separate, ratings associated with the Veteran's ankle disability. Specifically, a separate rating of under Diagnostic Code 5262 for impairment of the tibia and fibula, as it related to the Veteran's right ankle is available. However, reviewing the competent medical evidence of record, to include VA examination and medical record, does not show that the Veteran's right ankle disability includes symptomatology due to any malunion or nonunion of the tibia and fibula. In a May 2017 VA examination, the examiner noted the Veteran did not have malunion. Therefore, the Board notes that as there is no evidence that the Veteran's has impairment of the tibia or fibula, an additional separation rating under that Diagnostic Code is unwarranted. 

The Board finds that the preponderance of the evidence is against the assignment of any rating higher than 40 percent for the right ankle disability for those periods under consideration, and the claim for any higher rating must be denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C. § 5107 (2012); 38 C.F.R. § 3.102 (2016).

Right Knee Disability

The Veteran is currently rated 10 percent under two separate Diagnostic Codes for a right knee disability, under Diagnostic Code 5257 for his right knee strain with instability, and under Diagnostic Code 5003, for right knee limitation of motion. 38 C.F.R. § 4.71a (2017). The Veteran has asserted that the severity of the right knee disability is more severe than that represented by the assigned ratings. The Board finds that a review of the evidence of record, to include several VA examinations and VA medical records shows that the severity of the right knee disability does not warrant a higher rating than 10 percent under either applicable diagnostic codes, or under any other applicable codes for the knee, and that no additional separate rating is warranted. Therefore, the Board finds that the claim for increased rating must be denied. 

Under Diagnostic Code 5003, degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. When the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a rating of 10 percent is for application for each major joint or group of minor joints affected by limitation of motion, to be combined, not added under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, a 10 percent rating is warranted with X-ray evidence of involvement of two or more major joints or two or more minor joint groups, and a 20 percent rating is warranted with X-ray evidence of involvement of two or more major joints or two or more minor joint groups, with occasional incapacitating exacerbations. The 20 percent and 10 percent ratings based on X-ray findings will not be combined with ratings based on limitation of motion of the same joint. 38 C.F.R. § 4.71a, Diagnostic Code 5003, Note (1) (2017).

Diagnostic Code 5260 pertains to limitation of flexion of the knee. Under Diagnostic Code 5260, a 10 percent rating is warranted for flexion limited to 45 degrees. A 20 percent rating is warranted for flexion limited to 30 degrees. A maximum 30 percent rating is warranted for flexion limited to 15 degrees. 38 C.F.R. §4.71a, Diagnostic Code 5260 (2017). Normal range of knee motion is from 0 degrees of extension to 140 degrees of flexion. 38 C.F.R. §4.71, Plate II (2017). 

Under Diagnostic Code 5261, limitation of knee extension to 5 degrees warrants a 0 percent rating. Limitation of extension to 10 degrees warrants a 10 percent rating. Limitation to 15 degrees warrants a 20 percent rating. Limitation of extension to 20 degrees warrants a 30 percent rating. Limitation of motion to 30 degrees warrants a 40 percent rating. Limitation of motion to 45 degrees warrants a 50 percent rating. 38 C.F.R. §4.71a, Diagnostic Code 5261 (2017).

Separate ratings may be assigned for limitation of flexion and for limitation of extension. Separate ratings may also be assigned for limitation of motion, to include under Diagnostic Code 5003 or 5010, for instability of the knee under Diagnostic Code 5257, and for meniscal pathology under Diagnostic Code 5258 or 5259. However, separate ratings must be based on a showing that the evidence warrants independent compensable ratings. VAOPGCPREC 9-04 (2004), 69 Fed. Reg. 59990 (2005); VAOPGCPREC 23-97 (1997), 62 Fed. Reg. 63604 (1997).

Knee instability is rated under Diagnostic Code 5257. A 10 percent rating is warranted for slight recurrent subluxation or lateral instability. A 20 percent rating is warranted for moderate recurrent subluxation or lateral instability. A 30 percent rating is warranted for severe recurrent subluxation or lateral instability. 38 C.F.R. § 4.71 (2017). The words slight, moderate, and severe are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are equitable and just. 38 C.F.R. §4.6 (2017). Use of descriptive terminology such as mild by medical examiners, although an element of evidence to be considered by the Board, is not dispositive of an issue. 38 U.S.C. §7104(a) (2012); 38 C.F.R. §§4.2, 4.6 (2017). 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all those elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective enervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§4.10, 4.40, 4.45 (2015); DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions regarding the avoidance of pyramiding do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including during flare-ups. 38 C.F.R. §4.14 (2017).

Functional loss due to pain is to be rated at the same level as the functional loss when flexion is impeded. Schafrath v. Derwinski, 1 Vet. App. 589 (1993). Pain itself does not rise to the level of functional loss as contemplated by VA regulations, but pain may result in functional loss if it limits the ability to perform the normal working movements of the body with normal excursion, strength, speed, coordination, or endurance. Mitchell v. Shinseki, 25 Vet. App. 32 (2011); DeLuca v. Brown, 8 Vet. App. 202 (1995).

The Veteran was attended VA examinations to assess the severity of the service-connected right knee disability in May 2011, March 2015, and May 2017. After a review of the VA examinations, the Board finds marked similarities in the assessments of the severity of the right knee disabilities. Specifically, while being diagnosed with both right knee strain and degenerative joint disease of the right knee, the Veteran's limitation of motion has been only slightly affected. A thorough review of all three examinations shows that the Veteran's right knee has been, at worst, limited to 110 degrees of flexion and 0 degrees of extension, as noted in the May 2011 VA examination report. Further testing during examinations found no additional limitation of motion after repetitive testing with no evidence of further functional limitations caused by pain, weakness, fatigability, or incoordination. 

None of the examiners while testing for instability found evidence of even slight instability in the right knee. Tests for anterior, posterior, medial, and lateral instability were explicitly noted in the March 2015 and May 2017 examination to have found no evidence of instability, with no identified history of recurrent subluxation, lateral instability, or effusion. Further testing found no additional conditions such as shin splint, meniscal condition, or ankylosis. Ultimately, the examiners concluded that there was no functional impact to the Veteran's daily or occupational activities exclusively caused by the right knee disability. 

The Board finds that a thorough review of the VA medical evidence of record corroborates those assessments of the severity of the right knee disability, with no objective indications of a more severe condition than that represented by the VA examinations. Therefore, the Board finds those examinations offer a comprehensive and contemporaneous disability picture of the true severity of the right knee disability. 

Range of Motion

Applying these findings to the Veteran's claim for a higher rating, the Board notes that Veteran is current rated 10 percent for limitation of motion of the right knee. A 20 percent rating is not warranted unless the Veteran's range of motion is limited to 30 degrees of flexion, or 15 degrees of extension. 38 C.F.R. §4.71a, Diagnostic Code 5260, 5261 (2017). A simple review of the competent medical evidence of record shows that the Veteran's range of motion does not achieve those degrees of limitation, even considering any additional loss of function due to pain or other factors. The Veteran's range of motion was measured to be in excess of 100 degrees for flexion during all three examinations, measuring at worst 110 degrees during the May 2011 VA examination. Even considering medical records for the Veteran's right knee does not show any objective testing of range of motion that demonstrated limitation of flexion close to the requisite 30 degrees required for the next higher disability rating. 

Likewise, the Veteran's extension has remains with normal limits at 0 degrees during the entire claims period. All three VA examinations found no change in the limitation of extension, and medical records do not offer any objective testing demonstrating a limitation up to the requisite 15 degrees for the next higher rating under Diagnostic Code 5261. Furthermore, the evidence does not show limitation of extension to 10 degrees that would warrant any separate compensable rating.

The Board has considered the Veteran's lay statements and complaints of record. With regard to the lay statements, the Board notes that while the Veteran is competent to speak to the lay observable symptoms such as pain, he is not competent to speak to the specific objective criteria of exact measurements for range of motion as it pertains to the applicable Diagnostic Code. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Evaluations of the Veteran's right knee disability have been provided by medical professionals of record and their results were considered in this decision. The Board assigns more probative weight to those examination results because of the experience and training of the examiners and the objective testing conducted in providing the opinions.

Consequently, the Board finds that a higher or separate rating for limitation of motion is not warranted for flexion or extension. The objective medical evidence with regard to the specific measure of the range of motion of the right knee does not show that the disability achieves the necessary level of severity needed to assign the next higher rating, or any separation rating, under the limitation of motion criteria. Therefore, as the preponderance of the evidence is against the assignment of any higher rating, the claim for a higher rating for a right knee disability for limitation of motion must be denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. § 3.102 (2016).

Instability

The Veteran's right knee instability is rated 10 percent, under Diagnostic Code 5257. 38 C.F.R. §4.71a (2017). The Veteran contends that rating does not contemplate the severity of the right knee instability, and that right knee instability warrants a higher rating. The Board finds that the competent medical evidence of record and lay statements from the Veteran do not demonstrate a disability that may be considered moderate or worse recurrent lateral instability or subluxation, so as to warrant a higher rating. Therefore, the Board finds that a higher rating is not warranted. 

The Veteran's right knee instability is currently rated under Diagnostic Code 5257. Under that Diagnostic Code, a 10 percent rating is assigned for slight recurrent subluxation or lateral instability. A 20 percent rating assigned for moderate recurrent subluxation or lateral instability. 38 C.F.R. §4.71 (2017). The Board notes that the words slight, moderate, and severe are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that decisions are equitable and just. 38 C.F.R. §4.6 (2017). 

During the entire claims period, there has been no objective evidence of instability in the right knee upon testing. Specifically, in all three VA examinations in May 2011, March 2015, and May 2017, instability testing found a constant, if not improved condition in the right knee. In reports of the March 2015 and May 2017 VA examinations, the examiners conducted four different instability tests of the right knee after which the Veteran's condition was concluded to be normal, without even slight instability, and no evidence of recurrent subluxation. During both examinations, the Veteran reported to the examiner no specific changes in the knee condition, and only noted pain as a symptom of the disability. 

Again, a review of the VA medical evidence of record does not demonstrate any objective evidence or indications of issues with instability of the right knee. The medical records only demonstrates evidence of pain, with no specific testing or complaints for instability of the right knee, throughout the claims period. A review of the Veteran's lay statements and testimony also shows no evidence of specific complaints of right knee instability, giving-out, or the need for a knee brace.

The Board notes that the next higher 20 percent rating of for instability requires a moderate level of recurrent subluxation or lateral instability. While the Board does acknowledge that such evaluation, unlike assessing range of motion, is a subjective evaluation of the cumulative symptomology and manifestations of the disability, the evidence nonetheless cannot be found to constitute moderate recurrent subluxation or lateral instability. The Board finds that, in considering that Veteran's lay statements, medical records, and the VA examinations, the preponderance of evidence is against the finding that the severity of the Veteran's right knee condition has worsened, such that the condition surpasses the equivalent of slight instability. Specifically, the Board notes that not only do objective tests for instability reported by the VA examinations demonstrate no instability, or normal stability in the right knee, the Veteran's own lay statements, to include during VA examinations, do not show a changing or worsening instability. Therefore, the Board must find that a higher rating for right knee instability is not warranted, and the claim must be denied. 

For both claims for the right knee, the Board has considered a higher rating under any other applicable rating for the knee. However, the Board finds that no separate rating is warranted as there is no evidence or diagnosis for ankylosis, any semilunar cartilage condition, impairment of the tibia or fibula, or genu recurvatum. Therefore, a higher rating under these associated Diagnostic Codes would not be applicable to the Veteran's claim. 38 C.F.R. § 4.71a, Diagnostic Codes 5256, 5258, 5259, 5263 (2017).

The Board finds that the preponderance of the evidence is against the assignment of any higher or separate rating for a right knee disability and the claim for increased ratings must be denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. § 3.102 (2016).

Other Considerations

The Board has considered whether referral for consideration of an extraschedular rating is warranted for the Veteran's right knee instability and limitation of motion. The Board notes that there is no evidence of an exceptional or unusual disability picture not contemplated by the assigned Diagnostic Codes. 38 C.F.R. §3.321(b)(1) (2017); Shipwash v. Brown, 8 Vet. App. 218 (1995). The rating criteria reasonably describe the Veteran's disability level and symptomatology and provide for higher ratings for additional or more severe symptoms than currently shown by the evidence. Therefore, the disability picture for the service-connected right knee disability is contemplated by the rating schedule, and the assigned schedular ratings inadequate. Thun v. Peake, 22 Vet. App. 111 (2008).

Left Shoulder

The Veteran is shown to be right-handed, most recently at the May 2017 VA examination, but also in the service-medical records. Therefore, his left shoulder disability is rated for that of the minor arm. 38 C.F.R. § 4.69 (2017). Under Diagnostic Code 5201, a 20 percent rating is assigned for limitation of motion to midway between the shoulder and side, or 45 degrees. A higher 30 percent rating requires a limitation of motion of the minor arm to 25 degrees from the side. 38 C.F.R. § 4.71a, Diagnostic Code 5201 (2017).

Normal motion of the shoulder is from 0 to 180 degrees of forward elevation and 0 to 180 degrees of abduction, both measured with 0 degrees the position of the straight arm at the side with fingers pointing to the floor and with 180 degrees the position of a straight arm overhead with fingers pointing to the ceiling. Normal external rotation is from a position with the upper arm bent at the elbow and starting at a position parallel to the floor, defined as 0 degrees, and rotated upward to a position perpendicular to the floor, defined as 90 degrees. Normal internal rotation is from that same starting position but rotated downward to a position perpendicular to the floor, also defined as 90 degrees. 38 C.F.R. § 4.71a, Plate I (2017).

During the course of the Veteran's claim, the Veteran has attended VA examinations to assess the nature and severity of the left shoulder disability, in November 2009, March 2015 and May 2017. 

At a November 2009 VA examination, the Veteran reported pain and weakness, with some stiffness and tenderness in the shoulders. On examination, the report noted slightly decreased strength of 4/5 and some fatigue on repetitive testing. Tenderness of the soft tissue was noted, with no signs detected for impingement. Testing for range of motion found forward flexion to 180 degrees, abduction to 150 degrees, external rotation to 70 degrees, and internal rotation to 70 degrees. The examiner diagnosed post-surgical left rotator cuff repair. 

At a March 2015 VA examination, the Veteran reported constant pain in the left shoulder, with some limitation of motion. The Veteran admitted during the examination that his rotator cuff surgery had helped the overall shoulder condition. On examination of the left shoulder, the VA examiner found forward flexion to 120 degrees, abduction to 130 degrees, external rotation to 90 degrees and internal rotation to 90 degrees. Repetitive motion testing found no further decrease in range of motion. The examiner found no evidence of pain on weight bearing, and found that the range of motion did not contribute to further functional loss. There was objective evidence of localized tenderness or pain on palpation of the soft tissue. There was no evidence of pain, weakness, fatigability, or incoordination after repeated use. Muscle strength testing was within normal limits. There was no evidence of ankylosis. No rotator cuff condition was suspected for the left shoulder. The examiner reported no loss of head, nonunion, or fibrous union of the humerus. The examiner also reported that no clavicle, scapula, acromioclavicular joint or sternoclavicular joint condition was suspected. The examiner diagnosed a shoulder strain and X-ray diagnostics showed mild degenerative arthritis of the left shoulder. The examiner noted no functional loss due to the left shoulder condition. 

At a May 2017 VA examination, the Veteran noted complaints of increased pain in the left shoulder, with limitation of motion, especially during flare-ups. The examiner diagnosed left shoulder strain, impingement syndrome, tendonitis, rotator cuff tear, glenohumeral joint osteoarthritis, and acromioclavicular joint osteoarthritis. On examination of the left shoulder, the VA examiner found forward flexion to 160 degrees, abduction to 160 degrees, external rotation to 90 degrees and internal rotation to 90 degrees; repetitive motion testing reveals no further decreased in range of motion. The examiner found no evidence of pain on weight bearing, and that the range of motion did not contribute to further functional loss. There was objective evidence of localized tenderness or pain on palpation of the soft tissue. There was no evidence of pain, weakness, fatigability, or incoordination after repeated use. Muscle strength testing was within normal limits. There was no evidence of ankylosis. A rotator cuff condition was suspected for the left shoulder, with positive results of the Hawkins' Impingement Test and Empty-Can test. The examiner reported no loss of head, nonunion, or fibrous union of the humerus. The examiner also reported that no clavicle, scapula, acromioclavicular joint or sternoclavicular joint condition was suspected. Finally, the examiner noted no functional loss due to the left shoulder condition. 

The Board finds that a rating in excess of 20 percent is not warranted for a left shoulder disability. VA examinations show that the left shoulder disability has consistently been manifested by arm motion of greater than 25 degrees from the side. The Veteran's reports of pain and functional loss are adequately considered by the VA examination reports and findings of motion limitation, and do not show any limitation that would be equivalent to 25 degrees from the side, or less. There is no evidence of ankylosis of the left shoulder, impairment of the scapulohumeral joint, or impairment of the clavicle or scapula. The evidence does not show any increased loss of function due to weakness, pain, fatigability, or incoordination, or any other factors that cause the disability to more nearly approximate limitation of motion to 25 degrees from the side. DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. §4.59 (2017). Therefore, a rating in excess of 20 percent is not warranted. 

The Board also finds that a review of the contemporaneous medical records shows no evidence of a more severe condition in the left shoulder. Treatments for the Veteran's left shoulder during the claims period only show complaints of pain and some loss of range of motion. However, no objective testing during treatment shows range of motion lower than that represented in the VA examinations of record. 

In making a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which is found to be persuasive or unpersuasive, and provide the reasons for the rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36 (1994); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The Veteran is competent to report symptoms, such as pain, because that requires only personal knowledge as it comes to him through his senses. Layno v. Brown, 6 Vet. App. 465 (1994). However, the objective evidence does not demonstrate symptoms that more nearly approximate a higher rating under the schedule of ratings for the musculoskeletal system during the appeal period.

Accordingly, the Board finds that the preponderance of the evidence is against the assignment of a rating in excess of 20 percent for a left shoulder disability, and the claim is denied. 38 U.S.C. §5107(b) (2012); 38 C.F.R. §3.102 (2017); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Other Considerations

The Board has considered whether referral for consideration of an extraschedular rating is warranted for the left shoulder disability. The Board notes that there is no evidence of an exceptional or unusual disability picture not contemplated by the assigned Diagnostic Codes. 38 C.F.R. §3.321(b)(1) (2017); Shipwash v. Brown, 8 Vet. App. 218 (1995). The rating criteria reasonably describe the Veteran's disability level and symptomatology and provide for higher ratings for additional or more severe symptoms than currently shown by the evidence. Therefore, the disability picture for the service-connected left shoulder disability is contemplated by the rating schedule, and the assigned schedular ratings inadequate. Thun v. Peake, 22 Vet. App. 111 (2008).

ORDER

Entitlement to service connection for aggravation of a left knee disability is granted. 
 
Entitlement to service connection for aggravation of low back arthritis is granted. 

Entitlement to service connection for radiculopathy of the right lower extremity is granted. 

Entitlement to service connection for a neurologic disability, to include radiculopathy, of the left lower extremity is denied. 

Entitlement to an increased rating of 40 percent, but not higher, for a right ankle disability prior to August 3, 2010, is granted. 

Entitlement to a rating in excess of 40 percent rating for a right ankle disability from August 3, 2010, to July 25, 2011, and as of November 1, 2011, is denied.
 
Entitlement to a rating in excess of 20 percent for a left shoulder disability is denied.

Entitlement to a rating in excess of 10 percent for right knee sprain with instability is denied.

Entitlement to a rating in excess of 10 percent for right knee arthritis with limitation of motion is denied. 



____________________________________________
Harvey P. Roberts
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs